CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
Lynchburg
APR 08 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DONNA M. MCDILDA,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Case No. 6:04-CV-00036<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | )   By:  Michael F. Urbanski<br>)         United States Magistrate Judge<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Donna M. McDilda brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The case was referred to the undersigned magistrate judge on August 31, 2004 for report and recommendation.

Plaintiff originally received disability on an earlier application because she was severely overweight. Following gastric bypass surgery, plaintiff lost over two hundred pounds and began to work. After working for more than a year, plaintiff filed a new application for disability benefits due to problems with her hips, knees, and ankles, degenerative disc disease, depression, and anxiety. In reviewing plaintiff's application, the ALJ found that plaintiff's complaints were exaggerated and not supported by medical evidence, and were inconsistent with both her treatment and life activities. The ALJ also noted that no treating or examining physician had reported any clinical or laboratory findings that establish the presence of any disorder preventing her from performing any substantial gainful activity.

Review of the ALJ's decision and the medical record compels the conclusion that it is supported by substantial evidence. Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as the Commissioner's decision is supported by substantial evidence and proper under the law.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

On December 4, 2001, plaintiff applied for DIB alleging that she became disabled on April 2, 1992, due to mental problems and discomfort in her hips, knees, ankles, and ribs and problems with her "nerves." (Transcript, hereafter "R.", at 70-72, 85) Plaintiff's alleged onset was later changed to November 11, 2001, the last day on which she worked. (R. 16, 85) Plaintiff's claim was denied administratively. (R. 43-45, 51-52) Following a hearing before an administrative law judge ("ALJ"), (R. 53-55, 339), the ALJ denied plaintiff's claim for DIB, finding that she could perform unskilled sedentary work as a production inspector, a hand packager, or an assembler. (R. 13-30) The ALJ's decision became final for the purposes of

2

Case 6:04-cv-00036-NKM   Document 20   Filed 04/08/05   Page 2 of 13   Pageid#: 56

judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review. (R. 5-8) Having exhausted her administrative remedies, plaintiff filed the instant complaint.

Plaintiff is forty-three years old and obtained her G.E.D. (R. 70, 91) Plaintiff received disability benefits due to her condition prior to gastric bypass surgery, but since that time has held three different jobs. (R. 86) Starting in February 2000, plaintiff worked forty hours a week at the Waffle House Restaurant. Id. From January 2001 until June 2001, plaintiff worked fifty hours a week at the Lamano Age Group Home. Id. From August 2001 through November 2001, plaintiff worked forty hours a week at Wal-Mart. Id. At the hearing, a vocational expert testified that each of these jobs was unskilled and performed at the medium exertion level. Id.

In a signed statement to the Social Security Agency, plaintiff discussed her activities, relationships, and the obstacles that kept her from working. (R. 114-20) In discussing her activities, plaintiff indicated that while she took a while to complete her chores, she was able to perform many activities including loading the washer and dryer, vacuuming her rugs, preparing all of her own meals, washing dishes, and shopping once to twice a week at Wal-Mart. Id. at 115, 121. Plaintiff stated that she did not need additional help with personal care. Id. at 118. Plaintiff stated that she got along "very well" with friends and relatives and got along okay with her husband and son. Id. at 117-18. Plaintiff stated that her inability to "sit or stand for periods of time" prevented her from being able to secure employment. Id. at 119. In this statement, plaintiff failed to mention any limitations due to a mental impairment. Id.

After plaintiff stopped working, she was treated both in Lynchburg and Charlottesville for a host of maladies ranging from urinary problems to low back pain and depression. Plaintiff's

3

complaints are exhaustively cataloged in the ALJ's decision. Review of the record compels the conclusion that substantial evidence supports the ALJ's decision.

Plaintiff was seen in Lynchburg by K. Finnie Green, M.D., a urologist, shortly after the alleged onset date. Dr. Green's record of that examination does not support plaintiff's claim of disability. (R. 229) The note indicates that all of the medical tests done to plaintiff were negative and that "[p]resumably, she has a small microscopic AVM that is causing her persistent hematuria." Id.[1] Dr. Green did not believe that this hematuria was related to McDilda's back pain, and had nothing further to add regarding plaintiff's treatment or evaluation. Id. Dr. Green specifically noted that he cannot continue McDilda on disability or provide her with additional narcotic drugs. Id. The doctor suggested that McDilda obtain a second opinion at UVA.

McDilda subsequently was seen at UVA by Evan Heald, M.D., an internist, who treated her for depression and a multitude of other symptoms. (R. 317) After several trials with different medications, however, plaintiff eventually responded to Serzone,[2] and her depression improved somewhat. (R. 307, 317, 322) Dr. Heald recommended that McDilda contact the Community Services Board for treatment for her depression, but McDilda did not do so. (R. 304) On December 17, 2002, Dr. Heald indicated that although plaintiff suffers from "depression, asthma, thoracic back pain [and] Edema," that she will likely improve with a planned nerve ablation within six months. (R. 291) With treatment injections by the pain clinic, Dr. Heald indicated that plaintiff could be capable of self-supporting. Id. Six months later, on

---

[1] Hermaturia is a condition of blood in the urine.

[2] Serzone is a trade name for a preparation of nefazodone hydrochloride, an oral antidepressant.

4

June 19, 2003, Dr. Heald opined that plaintiff's pain and depression would make it "difficult for her to attend even a sedentary job currently." (R. 336) Dr. Heald's June 29, 2003 letter noted that McDilda has had "limited progress" in her pain and depression control since 2002, and that he anticipated "some long-standing difficulty with pain." Id. His letter stated further that "[h]owever, finances and transportation and weather have conspired to limit her follow-up with the Pain Management Center and there is still some room for improvement in her symptoms here." Id.

In May, 2003, McDilda was seen by Thomas L. Sarvay, M.D., a psychiatrist, at the request of her counsel. (R. 294-300) Dr. Sarvay diagnosed McDilda with recurrent major depressive disorder and cognitive difficulties. (R. 297) Dr. Sarvay reported that plaintiff's symptoms have prevented her from working since at least November, 2001, and that her prognosis for improvement within twelve months was "extremely guarded." (R. 297)

A residual functional capacity assessment was performed by a DDS physician on October 4, 2002. While that assessment did not involve an examination of McDilda, the DDS physician who reviewed her medical records noted that "[o]bjective medical evidence does not document an impairment that prevents work activity, " and "[w]hile this clt. may have some pain, there appears to be some exaggeration. While she states that she has to take breaks, she does accomplish her housework, takes care of her bills, finances, insurance claims, etc., personal needs, etc. This clt.'s allegations are not considered fully credible." ( R. 289)

5

## ANALYSIS

The three issues presented in this case are: (1) whether substantial evidence supports the decision of the ALJ that plaintiff's depression is not severe; (2) whether the ALJ acted properly in disregarding plaintiff's inability to concentrate as a factor in assessing which jobs she can perform; and (3) whether the Appeals Council should have considered a letter plaintiff's counsel submitted following the administrative hearing. Having examined these issues, the court finds that the Commissioner's decision is proper given the law and evidence, and that the Commissioner's motion for summary judgment should be granted.

### A. Whether Plaintiff's Impairment is Severe

Plaintiff asserts that the ALJ erred because he did not find her depression to be severe, arguing that the ALJ erred by substituting his opinion for that of McDilda's doctors, principally Drs. Heald and Sarvay. Plaintiff asserts that this case is similar to Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984), because the ALJ improperly substituted his lay opinion concerning the impact of plaintiff's depression on her ability to work for the uncontradicted opinions of Dr. Sarvay, the consultative examiner, and Dr. Heald, plaintiff's treating physician.

Plaintiff's contention is incorrect for a number of reasons. First, Dr. Heald's opinions do not suggest that McDilda's impairments render her incapable of any substantial gainful activity for a period of twelve months or more. Disability is defined in 42 U.S.C. § 423(d)(1)(A) as "[t]he inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 continuous months." See Barnhart v. Walton, 535 U.S. 212, 224 (2002). Medical impairments causing temporary periods of incapacitation for

6

periods over 12 months qualify as disabling when they preclude performance of substantial gainful activity on a reasonably regular basis. Totten v. Califano, 624 F.2d 10, 11-12 (4th Cir. 1980). Dr. Heald's first assessment, dated December 17, 2002, indicated that she was prevented from working for six months by her difficulty with pain which limits her attendance. (R. 291) At that time, Dr. Heald noted that he expected her condition to "improve with planned nerve ablation." (R. 291). While Dr. Heald later opined that plaintiff's pain and depression would make it difficult for her to perform even a sedentary job, his opinion noted that she was prevented from following treatment and that "there is still some room for improvement in her symptoms." (R. 336) As such, Dr. Heald's opinions are substantially more equivocal than plaintiff suggests.

Similarly, Dr. Sarvay's opinion is premised on plaintiff's unsubstantiated and incorrect statement that none of the medications helped her condition. (R. 295) Not only does his opinion fail to reflect her improvement on Serzone, it makes no mention of the fact that McDilda had not heeded Dr. Heald's advice that she obtain counseling. His diagnosis of disability, thus, is piggybacked on an erroneous and incomplete version of McDilda's treatment history. As such, the ALJ acting properly in discounting his opinion. See 20 C.F.R. § 404.1527(d).

Further, as aptly summarized by the ALJ, objective medical evidence does not support the extent of McDilda's complaints.

> Although the evidence confirms that the claimant alleges pain which she feels is totally disabling, her statements regarding her limitations do not rise to the level of disability as set forth in the Regulation. The claimant testified that since undergoing gastric bypass surgery and returning to work, she has experienced pain in her mid-thoracic area that is not relieved by either medication or treatment through a pain clinic, although the objective medical

> evidence does not support these allegations. She has variously reported to both her treating physician and to the physicians at the pain clinic that she has received some relief and then later reported obtaining no relief whatsoever. She has been non-compliant in taking her medications, stopping and starting different medication without her physician's guidance or knowledge, and alleged she was out of medicine for a two-week period after the dog destroyed the medication, without feeling it necessary to call the physician or present for treatment any earlier than a scheduled appointment. What relief she has obtained, she alleges has been from BC powders, an over the counter medication, and she has not been compliant in following recommended therapies though the pain clinic. These actions all indicate that her allegations of severe pain are exaggerated.
>
> Furthermore, she has exhibited drug-seeking behavior by obtaining psychotropic medications from friends that supposedly worked until her physician prescribed the same medication. In addition, the claimant has been treated for reactive airway disease and edema of the lower extremities which is controlled by medication and is described as stable by her treating physician, although smoking cessation would probably improve her asthmatic symptoms.
>
> The medical evidence has revealed that the claimant's subjective complaints are not substantial by the objective medical evidence. Her complaints have been exaggerated and are inconsistent.

(R. 25-26)

As regards her depression, the ALJ determined that it was not severe for three reasons.

(R. 24) First, the ALJ pointed out that plaintiff's depression improved somewhat with Serzone. Id. It is clear from the case law that where conditions are treatable through the use of medication, it is a criteria that the ALJ is permitted to use in making disability determinations. See, e.g., Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Schmidt v. Barnhart, 2005 U.S. App. LEXIS 674 at **19-20 (7th Cir. Jan. 14, 2005); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) ("If an impairment can be controlled by treatment or medication, it

cannot be considered disabling."). Dr. Sarvay was not told that McDilda's depression had improved with Serzone, and, in fact, his opinion is premised on the fact that she reported that she explained a "lack of response to numerous times with antidepressant medication." (R. 297) This reason alone provides sufficient basis for the ALJ to discount Dr. Sarvay's opinion.

Second, plaintiff did not seek out any counseling for her depression even though she was directed to do so by her doctor. (R. 24) The ALJ was permitted to consider plaintiff's refusal to seek counseling as probative on the issue whether or not she was disabled due to depression. See Stewart v. Apfel, 1999 U.S. App. LEXIS 15685, at **15-16 (4th Cir., July 12, 1999) (allowing that an ALJ was permitted to examine a claimant's failure to get counseling in making their disability determination).

Third, the ALJ found that plaintiff's claims of disability are inconsistent with her own statement of daily activities. In a signed statement, plaintiff stated that she was able to load the washer and dryer, sweep her floors, vacuum her rugs, prepare all of her meals, wash dishes, shop once or twice a week at Wal-Mart, and that she did not need any help with personal care. (R. 115-21) Plaintiff stated that she got along "very well" with friends and relatives and okay with her husband and son. (R. 117-18) Such daily activities constitute a relevant factor in determining whether symptoms are disabling. See 20 C.F.R. §§ 404.1529.

A substantial factor supporting the ALJ's decision is the fact that McDilda worked during the period she claims she suffered from depression. (R. 86, 162, 348) (indicating that plaintiff worked from February 2000 until November of 2001 at three different jobs while suffering from depression). Indeed, for one two-week period, plaintiff worked three jobs at one time. (R. 345) The fact that plaintiff worked to this extent during a period in which she claims to have suffered

9

from depression supports the Commissioner's decision that her depression was not disabling. Absent a showing of significant deterioration, McDilda cannot claim disability based on medical conditions she experienced while working. See Craig v. Chater, 76 F.3d 585, 596 n.7 (4th Cir. 1996); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970).

Finally, review of plaintiff's medical records supports that plaintiff's depression was not a "severe" impairment as of the alleged date of onset, November 11, 2001. In November, 2001, plaintiff was treated in Lynchburg for a urologic condition. In a medical visit occurring on November 30, 2001, plaintiff was advised by her doctor as follows: "I told the patient with regard to her back pain, this does not appear to be related to the kidneys and that I could not continue to provide narcotics nor could I continue to keep the patient on disability." (R. 229) This note makes no mention of depression, and there is scant reference to depression in McDilda's medical records from this period. (R. 131-233) In early 2002, plaintiff was treated for intermittent hematuria at UVA, but there is no indication in any of those treating physician records that she suffered from depression which could in any way be termed severe. (R. 234-244) While the medical records from Dr. Heald at UVA from later on in 2002 and 2003 contain more references to depression, they also reflect symptomatic improvement with medications. (R. 309, 307)

On balance, therefore, a careful review of the record reveals that substantial evidence supports the ALJ's determination that plaintiff's depression was not a severe impairment. (R. 24)

10

### B. Whether the VE Erred in Not Considering Plaintiff's Inability to Concentrate

The Commissioner found that plaintiff retained the functional capacity to perform a limited range of work at the sedentary level which does not require her to perform pushing or pulling with the lower extremities, never requires climbing ladders or scaffolds or that plaintiff be exposed to heights, and occasionally requires the use of ramps or stairs, or for plaintiff to engage in balancing, kneeling, stooping, crouching, or crawling. (R. 29-30) Based on this assessment of plaintiff's residual functional capacity, the vocational expert ("VE") concluded that plaintiff could perform significant numbers of jobs in the national economy. (R. 361)

Plaintiff notes in his testimony that the VE found that it would be impossible for a person having plaintiff's residual functional capacity and "no useful ability to maintain attention and concentration for extended periods" to do any of the jobs he stated plaintiff could perform. (R. 364) Plaintiff notes that Dr. Sarvay found that plaintiff had "no useful ability to maintain attention and concentration for extended periods." (R. 300)

As noted above, the ALJ discounted the testimony of Dr. Sarvay for a variety of reasons, all of which were consistent with relevant case law and the Social Security regulations. Under the regulations, the ALJ is provided with the discretion to discount the opinion of a medical source when it is inconsistent with the record. See 20 C.F.R. § 404.1527(d). As noted above, the ALJ appropriately discounted Dr. Sarvay's opinion as parroting McDilda's subjective complaints and as being founded on erroneous and incomplete information. Because the hypothetical fairly set forth all of the limitations found by the ALJ, the vocational expert's testimony supports the ALJ's conclusion that plaintiff was not disabled. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.

1989). The ALJ was not required to consider limitations that he did not believe supported by the evidence.

### C. Additional materials presented to the Appeals Council

Plaintiff submitted additional evidence to the Appeals Council following the decision of the ALJ to which the Appeals Council did not respond. (R. 4, 337-338) Specifically, plaintiff submitted a letter dated March 8, 2004 from Robert J. Golcheski, plaintiff's attorney. (R. 337) This letter provides no new evidence, but instead just summarizes errors that he believes the ALJ made in his decision, specifically regarding his failure to include limitations caused by plaintiff's depression in the hypothetical he submitted to the VE.

The Appeals Council must consider evidence submitted to it when it is deciding whether to grant review, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. Where the Appeals Council considered the new evidence, but denied review, the Fourth Circuit requires that reviewing courts consider the record as a whole, including the new evidence, in order to determine whether the decision of the ALJ is supported by substantial evidence. See id.

The Golcheski letter is not medical evidence, and as such fails under all of the Wilkins criteria. The Appeals Council acted properly in not providing additional explanation of why it discounted Golcheski's statements in it. As such, this decision revolves around the decision made by the ALJ following the initial hearing.

12

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, it is the recommendation of the undersigned that defendant's motion for summary judgment be granted.

## CONCLUSION

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this _____ day of April, 2005.

Michael F. Urbanski
United States Magistrate Judge